658 A.2d 824

**COMMONWEALTH of Pennsylvania**

v.

**Kenneth A. GEYER, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 7, 1995.

Filed May 19, 1995.

---

Thomas J. Wagner, West Chester, for appellant.

Brian E. Chudzik, Asst. Dist. Atty., Lancaster, for Commonwealth, appellee.

Before CIRILLO, OLSZEWSKI and HESTER, JJ.

OLSZEWSKI, Judge:

On the morning of June 25, 1993, Trooper Michael C. Witmer of the Pennsylvania State Police stopped appellant Kenneth Geyer on Route 222 in Ephrata Township and ticketed him for speeding, a summary offense. Geyer apparently volunteered that his license had been suspended, but Trooper Witmer issued no other tickets at that time. The trooper later contacted the Department of Transportation (PennDOT), which certified in a statement dated July 2, 1993 that Geyer's license was suspended for 30 days, effective June 15.

On July 13, Trooper Witmer filed a second citation against Geyer for violation of section 1543(a) of the Vehicle Code (Title 75, Pa.C.S.A.),[1] also a summary offense. By that time, however, Geyer had already pled guilty to the speeding violation. A district justice found Geyer guilty of the second summary offense, as did the court of common pleas after a trial *de novo*. Geyer now appeals the judgment of sentence, claiming that his prosecution for the second offense was barred by the compulsory joinder rule and by sections 110(1)(i) and (ii) of the Crimes Code (Title 18, Pa.C.S.A.). We disagree, and affirm.

In *Commonwealth v. Campana*, our Supreme Court promulgated the compulsory joinder rule by holding that all charges resulting from a single criminal episode shall be consolidated at one trial. 452 Pa. 233, 239, 304 A.2d 432, 434 (1973). The Court's opinion was based on its interpretation of the Double Jeopardy Clause of the Fifth Amendment, as well as important societal concerns such as the conservation of judicial and public resources. *Id.* at 250–253, 304 A.2d at 440–441. After the United States Supreme Court reversed and remanded, our Supreme Court reaffirmed its opinion on state constitutional grounds. *Commonwealth v. Campana*, 455 Pa.

---

1. This statute prohibits persons from "driv[ing] a motor vehicle on any highway or trafficway of this Commonwealth after the commencement of a suspension ... and before the operating privilege has been restored."

622, 314 A.2d 854, *cert. denied,* 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974).

In the interim, our legislature enacted section 110 of the Crimes Code, which provides in relevant part that once a defendant has been acquitted or convicted, he may not subsequently be prosecuted for

(i) any offense of which the defendant could have been convicted on the first prosecution; [or]

(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and was within the jurisdiction of a single court.

18 Pa.C.S.A. § 110(1). More recently, the Court has stated that "[a]ny treatment of an alleged *Campana* rule violation as a separate and distinct claim from an asserted section 110 violation is misleading," and that "section 110 in its entirety and the related sections of the Crimes Code are broader than our *Campana* rule." *Commonwealth v. Hude,* 500 Pa. 482, 488, 458 A.2d 177, 180 & n. 12 (1983).

In *Commonwealth v. Beatty,* 500 Pa. 284, 455 A.2d 1194 (1983), the appellant argued that because he had already pled guilty to a summary traffic offense, his subsequent prosecution for a charge of aggravated assault arising out of the same incident should be barred. The Court stated that while the traffic offense might technically have been within the jurisdiction of both the district justice and the court of common pleas, it would not interpret the statute in such a way as to ignore the traditional division of labor within our court system. *Id.* at 290, 455 A.2d at 1198 n. 3. Therefore, the Court reasoned, the traffic and assault offenses were not within the jurisdiction of a single court, and the second prosecution did not violate section 110. *Id.* at 288–292, 455 A.2d at 1197–98.

In *Commonwealth v. Breitegan,* the Court cited *Beatty* as support for its broader holding that "the compulsory joinder rule and Section 110 do not apply to prior summary convictions for traffic violations." 500 Pa. 384, 385–386, 456 A.2d

1340, 1341, *cert. denied,* 464 U.S. 991, 104 S.Ct. 480, 78 L.Ed.2d 678 (1983). In *Commonwealth v. Hoburn,* 335 Pa.Super. 536, 485 A.2d 24 (1984), and again in *Commonwealth v. Fischl,* 363 Pa.Super. 173, 525 A.2d 775 (1987), we relied on the *Breitegan* holding in disposing of appeals similar to the one now before us. Geyer argues that this line of cases is flawed because it applies the *Beatty* ruling out of context.

■ Geyer claims that the rule of *Beatty* should not apply to his case because both his offenses are clearly within the jurisdiction of the same court. In so arguing, Geyer fails to take account of the further words of the *Beatty* Court:

> Our interpretation of Section 110(1)(ii) as excluding traffic violations under the Motor Vehicle Code is further bolstered by a consideration of the purposes sought to be achieved by the legislative enactment as well as our promulgation of the compulsory joinder rule. The disposition of a summary offense in a traffic matter prior to the trial of a misdemeanor or felony does not present the type of governmental harassment of a defendant that would offend double jeopardy concerns.

500 Pa. at 290–291, 455 A.2d at 1198.[2] In arguing against established precedent, Geyer fails to demonstrate that his guilty plea on a speeding ticket, prior to his citation for the separate violation of driving under a suspended license, presents any type of governmental harassment at all. We find the line of cases cited above to be consistent with the *Beatty* Court's statement of policy.

Moreover, we find that Geyer's claim fails under the plain language of section 110(1)(ii), which requires the second offense to have been known to the prosecutor at the time of commencement of the first trial. The record shows that on July 2, 1993, when Geyer pled guilty to the first offense,

2. Despite the Court's allusion to double jeopardy, which no longer reflects the state of the law in that area, *see, e.g., Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), we have previously noted that the *Beatty* opinion is "based solely on the Supreme Court's interpretation of section 110." *Commonwealth v. Bellezza,* 412 Pa.Super. 469, 477–479, 603 A.2d 1031, 1036 (1992).

PennDOT was still in the process of issuing the report which confirmed his second violation. Therefore, the prosecutor could not yet have known which subsection of section 1543 Geyer had violated;[3] indeed, it had not yet been confirmed that Geyer had committed any additional violations at all. We therefore reject Geyer's attack on the bases of section 110(1)(ii) and the compulsory joinder rule.

In the alternative, Geyer claims that his case falls under section 110(1)(i), which bars prosecution for an offense of which the defendant could have been convicted at the first prosecution. We reject this claim as well, noting that the trooper was forbidden from even filing the citation until he had received the response from PennDOT. *See* 75 Pa.C.S.A. § 1543(d); *Commonwealth v. Heckman*, 404 Pa.Super. 335, 341, 590 A.2d 1261, 1264 (1991).

■ Geyer's last argument is that the trooper should not have issued the speeding ticket at the scene, but should have held onto it until he received verification of Geyer's second violation. Geyer cites no authority that would support a rule restraining our police from citing summary violations that have already been established. In fact, we note that former Rule 51A(1)(a) of the Pennsylvania Rules of Criminal Procedure required the officer to issue the traffic citation directly to defendant at the time of the offense, and we required strict compliance with this rule. *Fischl*, 363 Pa.Super. at 178, 525 A.2d at 777.

■ While Rule 51A has been superseded, it is clear that the requirement of issuing tickets at the scene has merely been relaxed in favor of the police,[4] and that a policy of

---

3. Subsections (a) and (b) of section 1543 define two different offenses. When a person drives while her operating privileges have been suspended, revoked, or cancelled, she is in violation of subsection (a), which carries a fine of $200. When the offender's license happens to be under suspension or revocation because of certain enumerated offenses, however, she is then in violation of subsection (b), which carries a fine of $1,000 and a prison term of not less than 90 days. 75 Pa.C.S.A. §§ 1543(a), (b).

4. Rule 51A has been replaced in part by Rule 60. The new rule no longer mandates that citations be issued at the time of the offense, and

promptitude remains. *See, e.g.,* Pa.R.Crim.P., Committee Introduction to Chapter 50 (recognizing "the importance of prompt notice that a summary offense is being alleged"); 42 Pa.C.S.A. § 5553(a) (requiring that proceedings for summary traffic violations be commenced within 30 days). The practice observed by Trooper Witmer thus conforms to our rules of criminal procedure in summary matters, and also serves the interests of the Commonwealth in issuing traffic citations in as timely and efficient a manner as possible.

Judgment of sentence affirmed.

instead requires the officer to file a citation with the proper authority "[w]hen it is not feasible to issue the citation to the defendant or when evidence is discovered after the issuance of a citation that gives rise to additional summary charges." Pa.R.Crim.P., Rule 60, 42 Pa.C.S.A.