J. S38007/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, :    IN THE SUPERIOR COURT OF
:          PENNSYLVANIA
           Appellant    :
:
           v.    :       No. 857 EDA 2013
:
ERIC LOWRY    :


Appeal from the Order Entered February 15, 2013,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0013931-2011


BEFORE:  FORD ELLIOTT, P.J.E., BOWES AND SHOGAN, JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:**FILED SEPTEMBER 19, 2014**

The Commonwealth appeals from the order of February 15, 2013, finding appellant not guilty of all charges.  Procedurally, this is a rather unusual case; however, after careful review, we are compelled to conclude that a retrial would violate the rule against double jeopardy.  The Commonwealth cannot appeal a verdict of acquittal.  Therefore, this court does not have the authority to entertain the Commonwealth's appeal, and we quash the instant appeal.

Following a traffic stop on the evening of May 6, 2011, appellee, Eric Lowry ("Lowry"), was charged with two counts of violating the Uniform Firearms Act ("VUFA")[1] and one count of possession of a small amount of

---

[1] 18 Pa.C.S.A. §§ 6106 (firearms not to be carried without a license) and 6108 (carrying firearms on public streets or public property in Philadelphia).

marijuana.[2]   On June 13, 2012, Lowry's motion to suppress physical evidence was granted as to the marijuana and denied as to the firearm. Lowry waived his right to a jury trial, and the matter proceeded to a bench trial on the remaining VUFA charges before the Honorable Ann M. Butchart.

A non-jury trial was held on January 18, 2013.   Police Officer Justin O'Brien testified that on May 6, 2011, at approximately 7:28 p.m., he observed Lowry make two turns without signaling.   (Notes of testimony, 1/18/13 at 13-14.)   Officer O'Brien immediately pulled the vehicle over. (*Id.* at 14.)  As he approached Lowry's vehicle, Officer O'Brien saw Lowry reach into the center console area, grab a black handgun, and place it into the glove compartment.   (*Id.*)   Officer O'Brien and his partner, Officer MacConnell, ordered Lowry out of the vehicle at gunpoint.   (*Id.* at 15.)  Officer O'Brien recovered a black Glock semi-automatic handgun from the glove compartment.   (*Id.* at 16.)   The firearm was loaded with one cartridge in the chamber and eight in the magazine.  (*Id.*)   Lowry did not produce a license to carry firearms, and a computer check with PCIC/NCIC did not indicate that Lowry possessed a valid license.  (*Id.* at 16-17.)

On cross-examination, defense counsel showed Officer O'Brien a license to carry firearms in Lowry's name with an expiration date of December 19, 2013.  (*Id.* at 18.)   Officer O'Brien acknowledged that it looked like a valid permit, but reiterated that PCIC/NCIC indicated that

_____

[2] 35 P.S. § 780-113(a)(31).

Lowry did not have a license to carry firearms. (*Id.* at 18-19.) Officer O'Brien also remarked that he has seen fake firearms permits. (*Id.*)

The Commonwealth next called Officer Vargas, who testified that on July 26, 2009, he confiscated a license to carry firearms from Lowry. (*Id.* at 21.) Officer Vargas placed the license on a property receipt which Lowry signed. (*Id.* at 22.) On cross-examination, Officer Vargas acknowledged that placing the license on a property receipt was improper police procedure. (*Id.* at 25.) Rather, the license is supposed to be forwarded via police mail to the Gun Permit Tracking Unit. (*Id.* at 27.) Officer Vargas admitted that he did not do that in this case. (*Id.*) Officer Vargas also agreed that Lowry appeared to have a license to carry firearms in his name. (*Id.* at 28-29.)

Following Officer Vargas' testimony, the Commonwealth moved several items into evidence, including a certificate of non-licensure. (*Id.* at 32-34.) The Commonwealth then rested its case. (*Id.* at 34.) At that point, Lowry made a motion for judgment of acquittal, arguing, *inter alia*, that the Commonwealth failed to prove he did not have a valid license to carry firearms on May 6, 2011.[3] The trial court denied Lowry's motion for judgment of acquittal. (*Id.* at 37.)

The Commonwealth then requested "bifurcation," asking for permission to bring in an additional witness from the Gun Permit Unit. (*Id.*

---

[3] Lowry also argued that the Commonwealth failed to prove he was properly notified that his license was revoked. (*Id.* at 36-37.)

at 41.)  According to the Commonwealth, this witness could testify regarding the issue of Lowry allegedly having multiple licenses to carry firearms.  (*Id.* at 46-48, 50.)  Judge Butchart indicated she would take the matter under advisement.  (*Id.* at 53.)

On January 23, 2013, Lowry filed a "motion to dismiss/or mistrial," arguing that, "The prosecution has prejudiced the Court by accusing defendant of a crime that he is not charged with before this court," *i.e.*, a counterfeit gun permit.  (Motion to dismiss, 1/23/13, Docket #5 at 2 ¶9.) (*See* notes of testimony, 1/18/13 at 44 ("Your Honor, if that's a counterfeit permit that he's producing it absolutely is relevant to this case.").)  Lowry also continued to argue that he was not provided proper notice of revocation as required by 18 Pa.C.S.A. § 6109(i).

On January 25, 2013, a hearing was held before Judge Butchart.  The trial judge denied the Commonwealth permission to reopen the case to present a witness from the Gun Permit Unit.  (Notes of testimony, 1/25/13 at 6.)  Judge Butchart noted, "I am denying that motion today because I believe it would prejudice the defendant and would outweigh any other consideration in front of the Court."  (*Id.*)  Judge Butchart also indicated she was granting Lowry's motion to dismiss, stating, "I find that, in fact, the Commonwealth has not at the time that it closed its case proven that the defendant, in fact, violated 6106 or 6108."  (*Id.*)  The trial court also entered an order to that effect, dismissing all charges.  (Docket #6.)

Another hearing was held on February 15, 2013, at which the trial court indicated that it wished to clarify the record. (Notes of testimony, 2/15/13 at 4.) The trial court then stated that, "On the charges of 6106 and 6108, I find the defendant in this case not guilty." (*Id.*) The Commonwealth then protested that the trial court had already denied Lowry's motion for judgment of acquittal, and entered an order granting the motion to dismiss[4]:

> [Assistant District Attorney Whitney Golden, Esq.]: Your Honor --
>
> [THE COURT]: Hold on.
>
> [MS. GOLDEN]: If I may. Your Honor did grant a motion to dismiss these charges.
>
> [THE COURT]: Correct.
>
> [MS. GOLDEN]: If I may ask you, are you overturning that ruling?
>
> [THE COURT]: We are clarifying. When I reread the motion, and I reread what had transpired on that date. I thought for purposes of clarity and simplicity it would be better to, in fact, just re[-]characterize it. Does that answer your question?
>
> [MS. GOLDEN]: It does. But, Your Honor, defense hadn't even rested in this case yes [sic], so I don't know how a ruling of guilt or not guilty could be made.

---

[4] Ordinarily, granting a defendant's motion to dismiss would not prevent the government from appealing or seeking retrial. **Commonwealth v. Roche**, 675 A.2d 341, 343 (Pa.Super. 1996), citing **Commonwealth v. Adams**, 502 A.2d 1345, 1350 (Pa.Super. 1986).

[THE COURT]: Basically, because the Commonwealth did not prove its case.

[MS. GOLDEN]: So would it be a motion for judgment of acquittal?

[THE COURT]: We already had a motion for judgement [sic] of acquittal and I denied that motion.

[MS. GOLDEN]: Just procedurally, Your Honor, I just don't understand because defense hadn't rested yet, so there can't be a ruling of guilt or not guilty.

[THE COURT]: I understand what you're saying. We could, if we wish, to dial it back a little bit. Defense could rest and then we could proceed. But I think that will be even more complicated given the status of this case. If there are any questions that either counsel, please direct them in writing. If it's necessary, we can clarify. I think we've handled this.

[MS. GOLDEN]: Yes, Your Honor.

[Defense counsel]: Thank you, Judge.

[THE COURT]: Thank you.

*Id.* at 4-6.

The Commonwealth filed a timely notice of appeal, together with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., on March 14, 2013. On October 25, 2013, the trial court filed an opinion, clarifying, once again, that it found the Commonwealth presented insufficient proof to convict Lowry of the VUFA charges. (Trial court opinion, 10/25/13 at 7.) The trial court stated that in retrospect, it should have granted Lowry's motion for judgment of acquittal;

however, it ultimately resolved the matter in Lowry's favor on the facts. (***Id.*** at 7-8.)

The Commonwealth has presented the following issue for this court's review: "Where the trial court denied [Lowry]'s motion for a judgment of acquittal and granted his motion for dismissal, did it err twenty-one days later when, after the Commonwealth's [sic] sought to list the matter for retrial, it vacated that ruling and substituted a final verdict of not guilty?" (Commonwealth's brief at 4.)

> "Double jeopardy protections afforded by the United States and Pennsylvania constitutions are coextensive and prohibit repeated prosecutions for the same offense." ***Commonwealth v. Lively***, 530 Pa. 464, 467, 610 A.2d 7, 8 (1992) (citations omitted). If a former prosecution results in either acquittal or conviction, statutory law explicitly precludes the Commonwealth from trying a defendant a second time. ***Commonwealth v. Bracalielly***, 540 Pa. 460, 470, 658 A.2d 755, 760 (1995) (citing 18 Pa.C.S.A. § 110). Thus, if the Commonwealth loses in a case, double jeopardy considerations preclude appeal. In contrast, a defendant convicted under an erroneous pre-trial ruling retains the right to cure the defect on appeal.

***Commonwealth v. Stevenson***, 829 A.2d 701, 704 (Pa.Super. 2003).

> Under the Double Jeopardy Clauses of both the United States and Pennsylvania Constitutions, as well as under the Pennsylvania Crimes Code, a second prosecution for the same offense after acquittal is prohibited. ***See*** U.S. CONST. amend. V; PA. CONST. art. I, § 10; 18 Pa.C.S. § 109(1).[Footnote 5] This rule barring retrial is confined to cases where the prosecution's failure to meet its burden is clear and a second trial would merely afford the prosecution another opportunity to supply evidence that it failed

to put forth in the first proceeding. **See Commonwealth v. Vogel**, 501 Pa. 314, 461 A.2d 604, 609-610 (1984) (citing **Burks v. U.S.**, 437 U.S. 1, 17, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)).  "This prohibition prevents the State from honing its trial strategies and perfecting its evidence through successive attempts at conviction.  Repeated prosecutorial sallies would unfairly burden the defendant and create a risk of conviction through sheer governmental perseverance." **Id.** (citing **Green v. United States**, 355 U.S. 184, 187-188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)).

[Footnote 5] Section 109 provides:

When a prosecution is for a violation of the same provision of the statutes and is based upon the same facts as a former prosecution, it is barred by such former prosecution under the following circumstances:

(1)   The former prosecution resulted in an acquittal. There is an acquittal if the prosecution resulted in a finding of not guilty by the trier of fact or in a determination that there was insufficient evidence to warrant a conviction.   A finding of guilty of a lesser included offense is an acquittal of the greater inclusive offense, although the conviction is subsequently set aside.

18 Pa.C.S. § 109(1).

**Commonwealth v. Gibbons**, 784 A.2d 776, 777-778 (Pa. 2001).

Double Jeopardy also necessarily bars an appeal by a state from a verdict of acquittal. **See Smalis v.**

*Pennsylvania*, 476 U.S. 140, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986); *Commonwealth v. Maurizio*, 496 Pa. 584, 437 A.2d 1195 (1981). A judgment of acquittal, whether based on a verdict of not guilty or on a ruling by the court that the evidence was insufficient to convict, may not be appealed. *See United States v. Scott*, 437 U.S. 82, 91, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). The trial court's characterization of its action does not necessarily control the classification of the action. *Commonwealth v. McDonough*, 533 Pa. 283, 621 A.2d 569, 573 (1993). Rather, a defendant is "acquitted" when the "ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged." *Id.* at 97, 621 A.2d 569 (quoting *United States v. Martin Linen Supply*, 430 U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977)).

*Id.* at 778.

"Perhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that '[a] verdict of acquittal . . . could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution.'" *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977), quoting *United States v. Ball*, 163 U.S. 662, 671, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896). As the Supreme Court of the United States has recently observed, "the factfinder in a criminal case has traditionally been permitted to enter an unassailable but unreasonable verdict of 'not guilty.'" *Jackson v. Virginia*, 443 U.S. 307, 317 n. 10, 99 S.Ct. 2781, 2788 n. 10, 61 L.Ed.2d 560 (1979). "'[W]e necessarily accord absolute finality to a jury's verdict of acquittal-no matter how erroneous its decision . . . .'" *Bullington v. Missouri*, 451 U.S. 430, 442, 101 S.Ct. 1852, 1860, 68 L.Ed.2d 270 (1981), quoting *Burks v. United States*, 437 U.S. 1, 16, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978). *Accord*,

> ***Commonwealth v. Mitchell***, 497 Pa. 14, 17, 438 A.2d 596, 597 (1981). Thus, where a defendant has been found not guilty at trial, he may not be retried on the same offense, "even if the legal rulings underlying the acquittal were erroneous." ***Sanabria v. United States***, 437 U.S. 54, 64, 98 S.Ct. 2170, 2179, 57 L.Ed.2d 43 (1978).

***Commonwealth v. Tillman***, 461 A.2d 795, 796-797 (Pa. 1983).

> ***See also Tibbs v. Florida***, 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982) (verdict of not guilty "absolutely shields the defendant from retrial"). So, too, no prosecution appeal lies from a not guilty verdict, even where that verdict is "based upon an 'egregiously erroneous foundation.'" ***Borough of West Chester v. Lal***, 493 Pa. 387, 392, 426 A.2d 603, 605 (1981), quoting ***Sanabria v. United States***, ***supra***, 43 U.S. at 64, 98 S.Ct. at 2178; ***see Fong Foo v. United States***, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962).

***Id.*** at 797.

The Commonwealth argues that the trial court granted Lowry's motion to dismiss on purely legal grounds, ***i.e.***, that the Commonwealth alleged Lowry presented a counterfeit gun permit, and this allegation so prejudiced Lowry as to necessitate a new trial. The trial court's January 25, 2013 order granting Lowry's motion to dismiss did not provide the basis therefore; however, it should be noted that Lowry also argued in his motion to dismiss that the Commonwealth failed to prove he had notice of revocation. The Commonwealth argues that notice of revocation is not an element of the offenses charged. Regardless, the trial court made it explicitly clear at the February 15, 2013 hearing that the Commonwealth failed to prove its case,

and entered an order finding Lowry "not guilty of all charges." The trial court found that the Commonwealth failed to prove some or all of the factual elements of the offenses charged. While the Commonwealth may disagree with the trial court's resolution of this case, it was a verdict of acquittal which absolutely bars the Commonwealth's right to appeal and terminates any subsequent prosecution under the principles of double jeopardy. *Cf. Commonwealth v. Micklos*, 672 A.2d 796 (Pa.Super. 1996), *appeal denied*, 686 A.2d 1309 (Pa. 1996) (where the trial court improvidently dismissed the charges after finding that the police lacked probable cause to stop the defendant's vehicle and that evidence derived from that stop must be excluded, the dismissal was predicated on wholly legal rather than factual grounds and was not the functional equivalent of an acquittal); *Commonwealth v. Adams*, 502 A.2d 1345 (Pa.Super. 1986) (trial court's order dismissing the charges against the defendant was not the functional equivalent of an acquittal, where the trial court dismissed the charges on the ground that the Commonwealth's witnesses had failed to appear; the order was entered on grounds unrelated to the defendant's actual guilt or innocence).

The Commonwealth also argues that once Judge Butchart had denied the Commonwealth's motion to reopen its case to present additional testimony and granted Lowry's motion to dismiss, the proceedings were concluded and she could not go back and "clarify" or "re-characterize" her

original, January 25 order and instead enter a verdict of not guilty. According to the Commonwealth, the February 15 order finding Lowry not guilty is a legal nullity.

We note that, under 42 Pa.C.S.A. § 5505, "Modification of orders," "Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." Therefore, we disagree that Judge Butchart lacked the authority to clarify her January 25 order. We also observe that even on January 25, 2013, in granting Lowry's dismissal motion, Judge Butchart specifically found, on the record, that the Commonwealth had failed to prove the charges. (Notes of testimony, 1/25/13 at 6.)

The cases relied on by the Commonwealth for the proposition that Judge Butchart's verdict was a "legal nullity" are all readily distinguished. *Cf. Commonwealth v. Robinson*, 33 A.3d 89 (Pa.Super. 2011), *appeal denied*, 42 A.3d 292 (Pa. 2012) (trial court, sitting as fact-finder, originally found the defendant guilty of theft by unlawful taking and sentenced him to eighteen months' probation but six days later, at the scheduled restitution hearing, *sua sponte* vacated the defendant's sentence and entered a verdict of not guilty, stating that it had failed to give due consideration to character evidence); *Commonwealth v. McDaniels*, 886 A.2d 682

(Pa.Super. 2005), ***appeal denied***, 903 A.2d 537 (Pa. 2006), ***cert. denied***, 549 U.S. 960 (2006) (trial court's entry of not guilty verdict on the charge of third-degree murder was a legal nullity, where it was entered after the jury announced it was unable to reach a verdict, they were discharged and a mistrial declared); ***Commonwealth v. Stark***, 584 A.2d 289 (Pa. 1990) (trial court's verdict of not guilty was a legal nullity where it had initially found the defendant guilty, but then changed its verdict during sentencing to one of not guilty after arguing with the assistant district attorney about the defendant's potential sentence).

Instantly, Judge Butchart never changed Lowry's verdict from guilty to not guilty or vice versa. Rather, she granted his motion to dismiss, stating in open court that the Commonwealth failed to prove its case, and then later clarified her order to reflect a verdict of not guilty. In hindsight, Judge Butchart acknowledged that the more proper course of action would have been to grant Lowry's motion for judgment of acquittal. However, the court's intentions were clear and her not guilty verdict cannot be said to have been a "legal nullity." We find the cases relied on by the Commonwealth to be inapposite.

The Commonwealth also complains that the evidence was sufficient to support a conviction. The Commonwealth states that it presented a certificate of non-licensure establishing that Lowry did not have a valid license to carry a firearm on May 6, 2011. (Commonwealth's brief at 21-

J. S38007/14

22 n.5.)  The Commonwealth also argues that there was sufficient evidence to establish Lowry knew his license had been revoked, including his attempt to conceal the weapon and Officer Vargas' testimony that he had confiscated Lowry's permit during a prior arrest.  (*Id.*)

The Commonwealth's argument misses the mark.  As stated above, a fact-finder's verdict of not guilty is absolutely final and completely insulated from appellate review, whether or not it was erroneous.  *United States v. Scott*, 437 U.S. 82, 91 (1978) ("[T]he law attaches particular significance to an acquittal . . . however mistaken the acquittal may have been."), quoting *Green v. United States*, 355 U.S. 184, 188 (1957).  The bottom line is that even if proper procedure was not followed, the trial court had jurisdiction to render the verdict that it did and its decision was unquestionably made on the facts, not merely legal grounds.  The trial court's verdict of not guilty in this case absolutely shields the defendant from retrial.  For these reasons, we are compelled to quash the appeal.

Appeal quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/19/2014

- 14 -